IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Jackie Arnold Kerce, | ) |
|                 Plaintiff, | ) Civil Action No. 6:09-2643-TLW-WMC |
| vs. | ) **REPORT OF MAGISTRATE JUDGE** |
| Nurse Paula Brodie, | ) |
|                 Defendant. | ) |

This matter is before the court on the defendant's motion for summary judgment (doc. 28). The plaintiff, a pre-trial detainee at the Hill-Finklea Detention Center ("HFDC") who is proceeding *pro se*, brought this action seeking relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

In his complaint, the plaintiff alleges deliberate indifference to his serious medical needs (diabetes). On February 1, 2010, the defendant filed a motion for summary judgment (doc. 28). On February 2, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. On February 18, 2010, the plaintiff filed his opposition to the defendants' motion for summary judgment.

**FACTS PRESENTED**

The plaintiff was incarcerated in the HFDC in Berkeley County on July 11, 2009, on a number of criminal charges including four counts of kidnaping, three counts of assault with intent to kill, criminal domestic violence of a high and aggravated nature, and

possession of a firearm in the commission of a violent crime (Brodie aff., ex. 1). Defendant Paula Brodie is employed as a nurse by a private medical clinic that has a contract for the provision of certain health services at the HFDC. On the day he was booked, the plaintiff completed an Inmate Medical Questionnaire (Brodie aff., ex. 2). The plaintiff indicated that he had a history of diabetes and high blood pressure; additionally, he stated that he had special dietary needs and that he was under the care of a doctor. The plaintiff's current medications were noted, and a verbal order for insulin shots two times per day was received from the physician, Dr. Etikerentse (Brodie aff., ex. 3).

On August 3, 2009, the plaintiff put in a sick call request. His request was to "ask about meds, ck on diabetes, rash on skin raw, constapation" [sic] (Brodie aff., ex. 4). Nurse Brodie evaluated the plaintiff that same day and scheduled him to be seen by the physician. Dr. Etikerentse saw the plaintiff the following day. No new orders were given. On September 14, 2009, the plaintiff sent a Request to Medical Sick Call claiming that his feet were swollen. Nurse Brodie examined the plaintiff the next day, checking his vital signs and observing his allegedly swollen feet. She checked his blood sugar level, which was normal. Nurse Brodie's exam notes indicate that the plaintiff had "very small pedal edema" (swelling), and scheduled him to be seen by the physician, who saw the plaintiff the next day (Brodie aff., ex. 5).

On October 6, 2009, the plaintiff put in another sick call request, again claiming that his feet were swollen. The plaintiff was scheduled to be seen by the physician, who saw him on October 14, 2009. Dr. Etikerentse's notes indicate that "both feet not swollen and no tenderness." No new orders were given (Brodie aff., ex. 6).

The plaintiff attached five handwritten "inmate grievance" and "sick call" requests to his complaint. None are directed to Nurse Brodie. Also, none of the documents are on Detention Center Sick Call Request or Request to Staff forms (*see* Brodie aff. ex. 4-6). Nurse Brodie affirms in her affidavit that she has never seen these documents before

2

they arrived attached to the plaintiff's complaint. She further testified that the only requests to be seen by the medical staff made by the plaintiff of which she is aware are those described above (Brodie aff. ¶ 3).

The plaintiff alleges that Nurse Brodie violated his constitutional rights by refusing him medical care. He claims that Nurse Brodie has refused to monitor his blood sugar, even though he informed jail officials that he had diabetes. He claims to have experienced "no less than three, maybe four, diabetic attacks." He seeks monetary relief in the amount of $750,000.00, for the court to order the HFDC to "monitor diabetic's blood sugar," and for Nurse Brodie's employment to be terminated.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

3

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) (citing *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988)). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to

prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied,* 500 U.S. 956 (1991). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Burton*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

The plaintiff alleges that Nurse Brodie violated his constitutional rights by her alleged failure to monitor his blood sugar levels. However, the only inference to be drawn from the medical records is that Nurse Brodie evaluated and provided medical services to the plaintiff according to physician instructions. Furthermore, the plaintiff was evaluated

5

and treated by the detention center physician and prescribed medications, at the appropriate time, by the detention center physician using his independent professional medical judgment. Furthermore, the plaintiff's medical records show that each time he requested to be seen by a nurse or physician, his request was honored (Brodie aff., ex. 4-6). The five handwritten "inmate grievance" and "sick call" requests attached to the plaintiff's complaint are not on the detention center's Sick Call Request or Request to Staff forms, and none are directed to Nurse Brodie. Further, Nurse Brodie affirms in her affidavit that she has never seen these documents before they arrived attached to the plaintiff's complaint. Also, the handwritten requests are all dated on or near to the dates of the Sick Call Requests and Requests to Staff included in the plaintiff's medical records.

The plaintiff has failed to show that the defendant had an actual intent or showed reckless disregard in failing to address the his serious medical needs. Accordingly, he cannot meet the second element of a deliberate indifference claim. At most, the plaintiff claims negligence or medical malpractice, which does not rise to the level of a constitutional violation simply because the victim is a prisoner. Based upon the foregoing, there has been no showing by the plaintiff of deliberate indifference to his overall medical needs by the defendant.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendant's motion for summary judgment (doc. 28) be granted.

s/William M. Catoe
United States Magistrate Judge

April 13, 2010

Greenville, South Carolina